UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| GEORGE CHESNEY, *et al.*, | ) | No. 3:09-CV-09 |
| v. | ) | (VARLAN/GUYTON) |
| TENNESSEE VALLEY AUTHORITY, | ) | |
| | | |
| JOT RAYMOND, *et al.*, | ) | No. 3:09-CV-48 |
| v. | ) | (VARLAN/GUYTON) |
| TENNESSEE VALLEY AUTHORITY, | ) | |
| | | |
| ANITA AUCHARD, *et al.*, | ) | No. 3:09-CV-54 |
| v. | ) | (VARLAN/GUYTON) |
| TENNESSEE VALLEY AUTHORITY, | ) | |
| | | |
| LEE SCOFIELD, *et al.*, | ) | No. 3:09-CV-64 |
| v. | ) | (VARLAN/GUYTON) |
| TENNESSEE VALLEY AUTHORITY, | ) | |
| | | |
| JAMES CAMPBELL, *et al.*, | ) | No. 3:09-CV-517 |
| v. | ) | (VARLAN/GUYTON) |
| TENNESSEE VALLEY AUTHORITY, | ) | |

**MEMORANDUM AND ORDER**

These civil actions are before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and by the referral of the Honorable Thomas A. Varlan, United States District Judge, for disposition of matters relating to discovery. Now before the Court are the Tennessee Valley Authority's Motion to Exclude the Proposed Expert Testimony of Barry Sulkin and to Conduct a Daubert Hearing, Motion to Exclude the Proposed Expert Testimony of J. Fred Heitman and to Conduct a Daubert Hearing, Motion to Exclude the Proposed Expert Testimony of Stephen King, Ph.D., M.P.H. and to Conduct a Daubert Hearing, Motion to Exclude the Proposed Expert Testimony of James Millette

and Steve Hays and to Conduct a Daubert Hearing, Motion to Exclude the Proposed Expert Testimony of Mark Quarles and to Conduct a Daubert Hearing, and Motion to Exclude the Proposed Expert Testimony of Dr. Nicholas Cheremisinoff and to Conduct a Daubert Hearing.

The Tennessee Valley Authority ("TVA") has responded in opposition to each of these motions, and on July 14, 2011, the Court held a hearing to address these motions. Attorneys Gary Davis, Jeff Friedman, and David Byrne were present representing the Plaintiffs. Attorneys Mark Anstoetter, Edwin Small, and Brent Marquand were present representing TVA. Following the hearing, the Court took this matter under advisement, and the Court finds that the matter is now ripe for adjudication. For the reasons stated below, the Court finds that TVA's motions are not well-taken, and they will be **DENIED**.

## II.  BACKGROUND

The facts underlying the instant litigation are familiar to the parties and the Court, having been stated in detail throughout these cases. In summary, TVA operates power production facilities throughout the country, including the Kingston Fossil Plant located in Roane County, Tennessee. The coal ash waste produced at the Kingston Fossil Plant is stored in wet containment facilities at nearby Swan Pond. On December 22, 2008, one of the coal ash containment dikes at the Swan Pond facilities failed. As a result of the dike failure, approximately 5.4 million cubic yards of coal ash sludge spilled from the 84-acre containment area of the Swan Pond facilities to an adjacent area of about 300 acres, consisting of primarily the Watts Bar Reservoir, the Clinch and Emory Rivers, and government and privately owned shoreline properties. See Mays v. TVA, 699 F. Supp. 2d 991, 995-1000 (E.D. Tenn. 2010) (providing a more detailed recitation of the events leading up to and

following the ash spill).

On March 26, 2011, District Judge Thomas A. Varlan granted in part and denied in part TVA's Motion to Dismiss or for Summary Judgment and Motions to Dismiss All Claims for Punitive Damages Against TVA and to Strike All Jury Demands Against TVA. Judge Varlan granted TVA's Motions to Dismiss All Claims for Punitive Damages Against TVA and to Strike All Jury Demands Against TVA and struck the Plaintiffs' requests for jury trials in these cases. In the Summer of 2010, Judge Varlan entered a scheduling Order setting these cases for bench trials commencing on September 13, 2011 and November 1, 2011.[1]

## III. POSITIONS OF THE PARTIES

In the motions that are now before the Court, TVA challenges the admissibility of seven experts that the Plaintiffs' expect to call at the trials of these cases. Generally, TVA challenges the relevancy of the proffered testimony and the reliability of the methods the expert used in formulating their testimony. TVA maintains that these experts and their proffered testimony do not satisfy the requirements of Rule 702 of the Federal Rules of Evidence or <u>Daubert v. Merrell Dow Pharmeceuticals, Inc.</u>, 509 U.S. 579 (1993), or both.

The Plaintiffs respond that their experts' opinions and testimony are relevant and reliable and meet the requirements of Rule 702 of the Federal Rules of Evidence and <u>Daubert</u>, 509 U.S. 579. The Plaintiffs contend that TVA's challenges to the relevance of the testimony simply reiterate its summary judgment arguments, and they maintain that each expert offers reliable testimony based

---

[1]The <u>Chesney</u>, <u>Raymond</u>, <u>Auchard</u>, and <u>Scofield</u> cases are set for a bench trial on September 13, 2011. The <u>Campbell</u> case is set for a bench trial in November 1, 2011.

3

upon sound and acceptable methodology applied to relevant facts and data.

IV.     ANALYSIS

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the United States Supreme Court confirmed that a trial court should serve as a gatekeeper in regards to proposed expert testimony, and should prevent a jury from being overwhelmed by unsupportable speculation cloaked as expertise. 509 U.S. at 595-96. In response to Daubert and subsequent decisions, Rule 702 of the Federal Rules of Evidence has been amended and now provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Daubert "gatekeeping" obligation applies not only to "scientific" testimony, but to all expert testimony. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 151-52 (1999).

Under Daubert, "[a] minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002). Instead, "the rejection of expert testimony is the exception rather than the rule," Fed. R. Evid. 702 advisory committee's note, because the "adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." Amorgianos, 303 F.3d at 267.

4

In applying Rule 702 and the Daubert standard, a trial judge is afforded broad discretion. United States v. Demjanjuk, 367 F.3d 623, 633 (6th Cir. 2004). "This discretion is particularly broad in a bench trial." Id. at 634. As the Court of Appeals for the Sixth Circuit has previously explained, "In a bench trial the judge, unlike the jury in a jury trial, hears the testimony whether it is admitted or not. The presumption, of course, is that the trial judge has the ability to disregard the testimony if it is found to be inadmissible." Can-Am Eng'g Co. v. Henderson Glass, Inc., 814 F.2d 253, 255 (6th Cir. 1987)

With these standards in mind, the Court turns to the expert testimony proffered in this case and the challenges posed to this testimony. The expected expert testimony and the challenges lodged by TVA can be summarized as follows:

1. **Barry Sulkin** is a water compliance expert, who is expected to testify regarding the spill's impact on water quality and alleged violations of state and federal clean water statutes. TVA argues that Sulkin's opinions relate to the reservoir's water quality. TVA contends that this testimony is irrelevant because TVA is riparian owner of the body of water. TVA argues that Mr. Sulkin's findings that "floating ash could be expected to be found almost anywhere in Watts Bar Lake" and that "on any given day floating coal ash could be found in front of anyone's property along this stretch of the rivers" are unreliable supposition.

2. **J. Fred Heitman** is an environmental consultant with "30 years experience in a variety of pollution investigations," who is expected to testify regarding water quality, violations of applicable statutes, a decline in water-related activities, and damage to the fish population. TVA again argues that it owns that reservoir, and therefore, the testimony is not relevant. TVA maintains that Mr. Heitman's testimony is unreliable because of inadequate sampling. TVA also argues that Mr. Heitman's opinions regarding the effect of fish contamination on property values is extrapolation, but the Plaintiffs have conceded that Mr. Heitman will not offer these opinions at trial.

3. **Stephen King, Ph.D., M.P.H.**, is a toxicologist and epidemiologist, who has a Ph.D. in environmental sciences. He is expected to testify regarding coal ash and particulate matter's "deleterious effects on humans, the environment, and ecosystems." TVA argues that Dr. King's testimony about potential harm from these materials is irrelevant because the Plaintiffs' claims are now limited to property damages. TVA alternatively argues that Dr. King has failed to establish actual exposure to coal ash through a scientifically valid channel

5

for transmission. TVA does not challenge the reliability of Dr. King's testimony.

4. **Steve Hays** is an industrial hygienist. Mr. Hays is expected to testify that coal ash from the spill has been transported by air currents to "subject properties" and has settled onto "various surfaces at subject properties." He notes that this "transport has continued over time as the spill damage has been remediated." TVA argues that Mr. Hays linked the ash to clean-up efforts, which the Plaintiffs cannot use as a basis for recovery. Mr. Hays also offers testimony about health risks, which TVA maintains is irrelevant. Finally, TVA contends Mr. Hays engaged in selective sampling and reporting.

5. **James Millette, Ph.D.**, is an environmental scientist and microscopist. Dr. Millette's proposed testimony focuses on reporting sampling data and offers the opinion that "the levels of ash particles at the residences sampled on September 30, 2010 are, with one exception, higher than the levels of ash particles at the comparison locations sampled on November 10, 2010." TVA argues that Dr. Millette's sampling locations were not chosen according to a scientifically valid plan and that results were selectively reported by choosing favorable results. TVA maintains that opinions that ash particles came from the ash spill rather than normal plant operation are not the products of any scientific methodology.

6. **Mark Quarles** is an environmental consultant with "approximately 25 years of experience in the field of investigating spills and releases of pollutants into the environment." He is expected to testify regarding environmental impact of the spill and the presence of contaminants following the spill. TVA maintains that Mr. Quarles's testimony that "private residential property" has been contaminated is irrelevant because he has not demonstrated that the property is owned by the Plaintiffs or that the contaminants come from the spill. TVA argues that Mr. Quarles's opinions are unreliable and speculative. TVA especially takes issue with Mr. Quarles's opinions that: water levels in the area have been above the contour elevation at 745; coal ash has likely been deposited on private property; and arsenic level in the soil in the area was zero prior to the spill.

7. **Nicholas Cheremisinoff, Ph.D.**, is a chemical engineer, who has worked for Exxon and consulted for the European Union and World Bank. He is expected to testify that: particulate matter was released in the spill; federal air quality standards were exceeded; and excavation and dredging activities following the spill released particulate matter into the air. TVA argues that Dr. Cheremisinoff's testimony is irrelevant because he does not properly correlate his findings to the spill itself, rather than clean-up efforts. TVA also argues that Dr. Cheremisinoff's testimony regarding the aggregated particulate matter releases in the region are unreliable and untested.

6

The Court has reviewed the expected testimony of each of the experts above and has carefully considered the arguments presented by TVA. At this juncture, the Court finds that these witnesses are qualified by knowledge, skill, experience, training, or education. The testimony to be offered by these witnesses appears to be based upon sufficient facts or data and to be the product of reliable principles and methods applied to the facts of this case in a reliable manner.

The Court finds that these witnesses should be allowed to testify at the trial of this matter, and to the extent the District Judge finds that the testimony presented does not comply with Rule 702 or the Daubert standards, he may decline to consider the evidence. The testimony to be presented appears to be scientifically sound, though susceptible to contradiction through the presentation of conflicting evidence and through vigorous cross-examination. There is little danger of the District Judge being confused or distracted by this evidence, and the District Judge has broad discretion to decline to consider or hear any testimony that he may find is irrelevant to the issues before him or that he may find is unreliable.

## V.  CONCLUSION

Accordingly, the Court finds that TVA's Motion to Exclude the Proposed Expert Testimony of Barry Sulkin and to Conduct a <u>Daubert</u> Hearing, Motion to Exclude the Proposed Expert Testimony of J. Fred Heitman and to Conduct a <u>Daubert</u> Hearing, Motion to Exclude the Proposed Expert Testimony of Stephen King, Ph.D., M.P.H. and to Conduct a <u>Daubert</u> Hearing, Motion to Exclude the Proposed Expert Testimony of James Millette and Steve Hays and to Conduct a <u>Daubert</u> Hearing, Motion to Exclude the Proposed Expert Testimony of Mark Quarles and to Conduct a <u>Daubert</u> Hearing, and Motion to Exclude the Proposed Expert Testimony of Dr. Nicholas Cheremisinoff and to Conduct a <u>Daubert</u> Hearing are not well-taken, and they are **DENIED**.

**IT IS SO ORDERED**.

ENTER:

s/ H. Bruce Guyton
United States Magistrate Judge